<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NICHOLAS J. ZAMPETIS, | |
| Plaintiffs, | Civil Action No. 15-1231 (NLH) |
| v. | |
| CITY OF ATLANTIC CITY, et al., | **OPINION** |
| Defendants. | |

**APPEARANCES:**

> DAVID R. CASTELLANI
> 450 Tilton Road, Suite 245
> Northfield, NJ 08225
> Attorney for Plaintiff Nicholas J. Zampetis
>
> A. MICHAEL BARKER
> VANESSA ELAINE JAMES
> Barker, Gelfand & James
> 210 New Road
> Linwood, NJ 08221
> Attorney for Defendant City of Atlantic City
>
> MICHAEL E. RILEY
> Law Offices of Riley & Riley
> 100 High Street
> Mt. Holly, NJ 08060
> Attorney for Defendants Ivan Lopez, Anthony Alosi, Jr.,
> Mike Auble

<u>**HILLMAN, District Judge**</u>:

Nicholas J. Zampetis, a resident of New Jersey, filed a Complaint against the City of Atlantic City, Atlantic City Police Officers Ivan Lopez, Anthony Alosi, Jr., Mike Auble, and several John Doe police officers claiming violation of his

rights under 42 U.S.C. 1983 and New Jersey law.  Plaintiff asserts that on February 17, 2013, while he was celebrating a friend's birthday at the Tropicana Hotel and Casino in Atlantic City, he became involved in a verbal disagreement with persons at the hotel; the Defendant police officers arrived and, without provocation, attacked and beat Zampetis and arrested him without probable cause.

Presently before the Court are separate motions to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by the City of Atlantic City and by the four named police officers.  In each motion, Defendants claim that the Complaint does not satisfy the pleading standard set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Plaintiff responds that he has alleged sufficient facts to adequately plead claims under § 1983 against the City and against each named police officer.  For the reasons expressed below, and pursuant to Rule 78, this Court will grant the motions, dismiss the federal claims presented in the Complaint without prejudice, and decline to exercise supplemental jurisdiction.

## I.  BACKGROUND

In this Complaint, Zampetis sues the City of Atlantic City, Atlantic City Police Officers Ivan Lopez, Anthony Alosi, Jr.,

2

Mike Auble and five John Does.  He asserts that at about 2:00 to
3:00 a.m. on February 17, 2013 (early Sunday morning), while
celebrating a friend's birthday at the Tropicana Hotel and
Casino in Atlantic City, Defendants Lopez, Alosi, Auble and John
Doe officers falsely arrested him.  He alleges that these
Defendants also beat him and falsely charged him with criminal
charges to cover up their wrongdoing.

In Count One, Zampetis claims that the individual police
officers violated his constitutional rights to freedom from
unlawful arrest, false imprisonment, deprivation of liberty, and
excessive force under 42 U.S.C. § 1983.  In Count Two, Zampetis
asserts that the City of Atlantic City had actual knowledge that
the individual Defendants had a propensity to violate the Fourth
Amendment rights of persons and failed to take appropriate
action; Atlantic City and its Police Department adopted policies
and procedures designed to prevent citizens from filing
complaints with Internal Affairs; Atlantic City had a custom of
allowing officers to use excessive force during arrests and to
file false criminal charges and reports without fear of
discipline; and Atlantic City failed to adequately train and
supervise officers regarding the requirements of the Fourth
Amendment.  In Count Three, Zampetis claims that the individual

3

Defendants conspired to violate his constitutional rights and in
Count Four he claims that the actions of the individual
Defendants warrant an award of punitive damages.  In Count Five,
Zampetis asserts that Defendants violated his rights under New
Jersey law.

## II.  STANDARD OF REVIEW

To survive dismissal for failure to state a claim upon
which relief may be granted under Rule 12(b)(6), "a complaint
must contain sufficient factual matter, accepted as true, to
'state a claim for relief that is plausible on its face.' A
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged.'"
Iqbal, 556 U.S. at 678 (citations omitted).  Although for the
purposes of Rule 12(b)(6) a court must take factual allegations
in the complaint as true, a court is "not bound to accept as
true a legal conclusion couched as a factual allegation."  Bell
Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
quotation marks omitted).

Thus, in deciding a motion to dismiss, a court uses a
three-step process.  See Santiago v. Warminster Tp., 629 F.3d
121, 130 (3d Cir. 2010).  First, a court must "tak[e] note of

4

the elements a plaintiff must plead to state a claim [under the appropriate substantive law]." Iqbal, 556 U.S. at 675.  Second, a court identifies "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679; see also Santiago, 629 F.3d at 128 ("We take as true all the factual allegations of the Third Amended Complaint and the reasonable inferences that can be drawn from them, but we disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements.") (citations and internal quotation marks omitted). Third, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. at 130.

### III.  DISCUSSION

**A.  Federal Claims**

The first step in reviewing the Complaint requires the Court to identify the elements of each claim.  In Count One, Zampetis claims that the individual police officers violated his Fourth Amendment rights prohibiting excessive force during arrest, arrest without probable cause, and false imprisonment. To recover under 42 U.S.C. § 1983 against an individual, a

5

plaintiff must show:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

(1)  Fourth Amendment Claims Against the Officers

The Fourth Amendment safeguards "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV.  When a plaintiff alleges use of excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures.  See Tolan v. Cotton, 134 S.Ct. 1861, 1865 (2014); Graham v. Connor, 490 U.S. 386, 394 (1989).  "To prevail on a Fourth Amendment excessive-force claim, a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." Lamont v. New Jersey, 637 F.3d 177, 183 (3d Cir. 2011).  "Determining whether the force used to effect a particular seizure is 'reasonable' ... requires ... careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting

6

arrest or attempting to evade arrest by flight." <u>Graham</u>, 490
U.S. at 396.

In addition, the Third Circuit instructs consideration of
"the possibility that the persons subject to the police action
are themselves violent or dangerous, the duration of the action,
whether the action takes place in the context of effecting an
arrest, the possibility that the suspect may be armed, and the
number of persons with whom the police officers must contend at
one time." <u>Santini v. Fuentes</u>, 795 F.3d 410, 417 (3d Cir. 2015)
(quoting <u>Sharrar v. Felsing</u>, 128 F.3d 810, 822 (3d Cir. 1997)).
The inquiry is objective and fact specific.  <u>See</u> <u>Graham</u>, 490
U.S. at 397; <u>Santini</u>, 795 F.3d at 417.  "Reasonableness is to be
evaluated from the perspective of a reasonable officer on the
scene, rather than with the 20/20 vision of hindsight."
<u>Carswell v. Borough of Homestead</u>, 381 F.3d 235, 240 (3d Cir.
2004) (internal quotation marks and citation omitted).

"To state a claim for false arrest under the Fourth
Amendment, a plaintiff must establish:  (1) that there was an
arrest; and (2) that the arrest was made without probable
cause."  <u>James v. City of Wilkes-Barre</u>, 700 F.3d 675, 680 (3d
Cir. 2012) (citing <u>Groman v. Twp. Of Manalapan</u>, 47 F.3d 628, 634
(3d Cir. 1995)).  "The proper inquiry in a section 1983 claim

7

based on false arrest . . . is not whether the person arrested
in fact committed the offense but whether the arresting officers
had probable cause to believe the person arrested had committed
the offense." Groman, 47 F.3d at 634 (quoting Dowling v. City
of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988)).  Generally,
the existence of probable cause is a factual issue and depends
on the elements of the criminal charges.  See Halsey v.
Pfeiffer, 750 F.3d 273, 300 (3d Cir. 2014); Groman, 47 F.3d at
635; Deary v. Three Un-Named Police Officers, 746 F.2d 185, 191
(3d Cir. 1984).

The constitutional tort of false imprisonment overlaps with
false arrest.[1]  See Wallace v. Kato, 549 U.S. 384, 388 (2007).
When a person is arrested without probable cause, the
constitutional tort of "false imprisonment ends once the victim
becomes held *pursuant to [legal] process* – when, for example, he
is bound over by a magistrate or arraigned on charges . . . If
there is a false arrest claim damages for that claim covers the
time of detention up until issuance of process or arraignment,

---

[1] Zampetis claims that the Defendant officers deprived him of
liberty without due process.  The Court construes this as an
attempt to state a false imprisonment incident to arrest claim
under § 1983.

8

but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself."  Id. at 389-90 (citations and internal quotation marks omitted).

To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred.  See D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); see also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008).  The assertion in a complaint of an unlawful agreement or conspiracy is a legal conclusion that is not entitled to the assumption of truth.  See Twombly, 550 U.S. at 555.

As required by the second and third steps, the Court will now identify the legal conclusions that must be disregarded as unsupported and determine whether the non-conclusory factual allegations state a claim against an individual officer.  In the section of the Complaint captioned "Introduction," Zampetis asserts the following:

> On or about February 17, 2013, the plaintiff Nicholas J. Zampetis was a patron at the Tropicana Hotel and Casino celebrating the birthday of one of his friends along with about fifteen to twenty other people. During the course of the evening at approximately 2:00 to 3:00 AM on a Saturday night, plaintiff and others

9

in his party got into a verbal disagreement and/or
argument with other people at the Tropicana Hotel and
Casino to which the defendant City of Atlantic City
Police Officers were called.  The defendants without
provocation and/or probable cause proceeded to attack
and beat plaintiff with their hands, fists, knees,
kicks, and batons.  The plaintiff was falsely arrested
and beaten as aforementioned without threat of injury
or provocation to the defendant individual police
officers and without legal justification.

The plaintiff Nicholas J. Zampetis suffered severe and
permanent injuries from the violent and vicious and
unprovoked attack and excessive use of force at the
hands of the individual defendant officers.

(ECF No. 1 at 1-2) (paragraph numbers omitted).  Later, in the

section labeled "Factual Allegations," Zampetis alleges:

On or about February 17, 2013, at approximately
between 2:00 and 3:00 AM, the plaintiff Nicholas J.
Zampetis while a patron at the Tropicana Hotel and
Casino was falsely arrested, and falsely charged with
criminal charges by the defendants Police Officers . .
. and was thereafter, physically attacked, beaten with
hands, fists, knees, kicks, baton strikes and
otherwise by these individual defendants and
thereafter falsely charged with criminal Complaints to
cover up these defendants['] wrong doing.

(ECF No. 1 at 4) (paragraph number omitted).

Zampetis sets forth no additional factual allegations

concerning the individual Defendants.  Thus, his assertion that

the Defendant officers falsely arrested him to cover up their

use of excessive force must be disregarded because it is a legal

conclusion.  The legal conclusion concerning a false arrest

without probable cause is similarly not supported by factual

10

allegations.  For example, he asserts no facts regarding what he and the officers did prior to his being taken into police custody, the number of people involved when the police arrived or the crimes for which he was arrested.[2]  In the absence of factual allegations showing that the police lacked probable cause to arrest him for a charged offense, the Complaint does not sufficiently state a false arrest claim under the Fourth Amendment.

Similarly, without more, Plaintiff's allegations that "[t]he defendants without provocation and/or probable cause proceeded to attack and beat plaintiff with their hands, fists, knees, kicks, and batons," do not show that the force used by any Defendant was excessive under the circumstances.  The Complaint provides no facts respecting the severity of the

———————————————

[2] Zampetis states in his opposition brief that the officers charged him with resisting arrest and assault, and that he was acquitted of these charges on February 6, 2015.  But in deciding a 12(b)(6) motion, this Court cannot consider the contents of a reply brief. See McTernan v. City of York, PA, 577 F.3d 521, 526 (3d Cir. 2009) ("We have stated that, in deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.  In addition to the complaint itself, the court can review documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion.") (citation omitted).

crimes, whether Zampetis may have posed an immediate threat to the safety of the officers or others, the duration of the incident, the role that each officer played in the alleged assault, the number of people involved, or whether he was trying to resist arrest or to evade arrest by flight.  In the absence of contextual allegations, the Complaint does not substantiate the conclusion that the individual Defendants' use of force was without provocation and excessive.[3]

Because the non-conclusory facts do not show that the police arrested Zampetis without probable cause, the allegations are necessarily deficient in stating a constitutional false imprisonment incident to arrest claim.  Similarly, the Complaint does not adequately plead a conspiracy claim because it does not

_____

[3] <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), teaches that plaintiffs who allege all the same basic facts against all the defendants are unlikely to assert a plausible claim.  While it is possible that each of the defendants arrested plaintiff and that each of them assaulted him as described, such a claim is not plausible. In addition to separating out facts from legal conclusions, a plausible claim alleges facts that are specific to the role played by each individual which often varies in group settings and activities.  For example, it seems unlikely that even if a group assault occurred that all of the officers participated in the post-assault arrest.  <u>See</u> <u>id</u>. at 677 ("[E]ach Government official . . . is only liable for his or her own misconduct,") and <u>id</u>. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

set forth facts from which a conspiratorial agreement to violate Zampetis's Fourth Amendment rights can be inferred.

The foregoing analysis demonstrates that the Complaint has not "nudged [Plaintiff's] claims" of unconstitutional false arrest, excessive force, false imprisonment and conspiracy "across the line from conceivable to plausible."  Iqbal, 556 U.S. at 680 (quoting Twombly, 550 U.S. at 570).  The Court will grant the motion to dismiss filed by the individual police officers and dismiss the § 1983 and conspiracy claims against them without prejudice to the filing of an amended complaint within 30 days of the date of the entry of the Order accompanying this Opinion.  See Del Rio-Mocci v. Connolly Properties Inc., 672 F.3d 241, 251 (3d Cir. 2012); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

(2) Federal Claims Against the City

Zampetis asserts that the City of Atlantic City is liable for violation of his Fourth Amendment rights because policies and customs of Atlantic City caused the violation of his rights by the individual Defendants.  But "neither Monell ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when ... the officer inflicted no constitutional harm."

13

City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); accord Mulholland v. Government County of Berks, PA., 706 F.3d 227, 238 n.15 (3d Cir. 2013); Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003).  If a municipal actor "inflicted no constitutional injury . . . , it is inconceivable that [the municipality] could be liable." Heller, 475 U.S. at 799.  In this case where the Court has found that the Complaint fails to adequately state a federal claim against any individual defendant, the Complaint necessarily fails to state a claim against the City of Atlantic City.  Id.

Alternatively, even if the Complaint adequately asserted a § 1983 claim against an individual police officer, as written, it does not state a claim against the City of Atlantic City.  As Plaintiff acknowledges, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978).

In his Complaint, Zampetis asserts that the violation of

14

his Fourth Amendment rights was caused by the following policies, practices and customs of the Atlantic City Police Department:  (1) "Atlantic City and the Atlantic City Police Department formally adopted policies and standard operating procedures designed to prevent formal complaints from being filed within Internal Affairs Unit in favoring the statement of police officers over the statements of citizens complaining of police abuse or misconduct resulting in the exoneration of the officers . . ., creating an atmosphere where unconstitutional behavior of the police officers is tolerated, condoned and ratified by the Atlantic City Police Department;" (2) "Atlantic City and the Atlantic City Police Department have a permanent and well settled practice or custom of allowing police officers, including the defendants . . . to employ excessive force while effectuating arrest;" (3) "Atlantic City and the Atlantic City Police Department have a permanent and well settled policy, practice and custom of allowing police officers including the defendants . . . to use excessive force and unreasonable force without fear of discipline;" (4) "Atlantic City and the Atlantic City Police Department have a permanent and well settled practice allowing police officers including defendants . . . to falsify arrest and charge civilians without probable cause as a

15

tool to conceal their own illegal and unreasonable conduct, creating an atmosphere of illegal and unconstitutional behavior in deliberate indifference and reckless disregard of the public at large including the plaintiff;" (5) "Atlantic City and the Atlantic City Police Department have a permanent and well settled practice or custom allowing police officers including defendants . . . to file false reports, fabricate evidence, destroy evidence and make false statements as a tool to conceal their own illegal and unreasonable conduct in deliberate indifference;" (6) "Atlantic City and the Atlantic City Police Department have a permanent and well settled practice of failing to protect the citizens of Atlantic City from unconstitutional actions of police . . . by exonerating rogue police officers, by refusing to investigate civilian complaints, and by convincing civilians not to file formal citizens' complaints;" (7) "Atlantic City and the Atlantic City Police Department have a permanent and well settled practice of refusing to adequately respond to and investigate complaints regarding officer misconduct;" (8) "Atlantic City and the Atlantic City Police Department have a permanent and well settled practice of violating their own policies and procedures in relation to the use of force as well as the Attorney General Guidelines relating

to the use of force and the removal of officers from the line of duty pending administrative investigations." (ECF No. 1 at 7-10.)

But these allegations are conclusory. Without more, Zampetis cannot satisfy the Iqbal pleading standard by asserting that Atlantic City had a policy or custom of allowing police officers to use excessive force and to arrest people without probable cause. Liability may be imposed against a municipality under Monell "when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted). A policymaker is a person who is "responsible for establishing final government policy respecting" the activity in question and "whether an official had final policymaking authority is a question of state law." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). "[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in

17

question." Id. at 483.

Where, as in this case, "a plaintiff claims that the municipality . . . has caused an employee to [violate the Constitution], rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bd. Of County Com'rs of Bryan County, Okl. V. Brown, 520 U.S. 397, 405 (1997). "[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences." Id. at 407. The plaintiff must show that (1) a policymaker had (2) notice that a constitutional violation was likely to occur, (3) acted with deliberate indifference to the risk, and (4) the failure to act caused the constitutional violation. See Connick v. Thompson, 563 U.S. 51, __, 131 S.Ct. 1350, 1358 (2011). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 131 S.Ct. at 1360 (quoting Bryan County, 520 U.S. at 410.

For example, in Bryan County, Mrs. Brown sued Sheriff Moore

18

and the County under § 1983 after Deputy Sheriff Burns used
excessive force against her by dragging her out of her car and
spinning her to the ground (causing severe injury to her knees).
Mrs. Brown claimed that the County was liable because the
policymaker, Sheriff Moore, had hired Burns, the son of Moore's
nephew, even though Burns had pleaded guilty to various
misdemeanors, including assault and battery, resisting arrest
and public drunkenness.  A jury found that the hiring policy of
Bryan County in Burns's case as instituted by its policymaker,
Sheriff Moore, amounted to deliberate indifference to the
constitutional rights of Mrs. Brown.  The Supreme Court
reversed, holding that the District Court had erred by
submitting the case to a jury "[b]ecause there was insufficient
evidence on which a jury could base a finding that Sheriff
Moore's decision to hire Burns reflected conscious disregard of
an obvious risk that a use of excessive force would follow."
Id. at 415.

Similarly, in Connick a jury found that the Orleans Parish
District Attorney's Office had violated Thompson's rights under
Brady v. Maryland, 373 U.S. 83 (1963), because Harry Connick,
the District Attorney-policymaker, failed to adequately train
his attorneys about their duty under Brady to produce

exculpatory evidence and this lack of training had caused non-disclosure of an exculpatory lab report identifying the blood type of the perpetrator in a robbery case wherein Thompson was wrongly convicted.  The Supreme Court held that the § 1983 case had improperly gone to the jury because Thompson did not show that Connick "was on actual or constructive notice of, and therefore deliberately indifferent to, a need for more or different <u>Brady</u> training."  <u>Connick</u>, 131 S.Ct. at 1358. Significantly, the Court rejected the notion that a "showing of obviousness can substitute for the pattern of violations ordinarily necessary to establish municipal culpability," <u>Connick</u>, 131 S.Ct. at 1361, and held that the district court "should have granted Connick judgment as a matter of law on the failure-to-train claim because Thompson did not prove a pattern of similar violations that would 'establish that the policy of inaction [was] the functional equivalent of a decision by the city itself to violate the Constitution.'"  <u>*Id.*</u> at 1366 (quoting <u>Canton</u>, 489 U.S. at 395).

In this case, the Complaint filed by Zampetis is deficient because it does not assert facts (1) identifying the policymaker

for the Atlantic City police department[4] at the time of the
incident, showing how that policymaker had (2) notice and (3)
"consciously disregarded an obvious risk that the officer[s]
would subsequently inflict a particular constitutional injury,"
Bd. Of County Com'rs of Bryan County, Okl. V. Brown, 520 U.S.
397, 411 (1997), and showing that the policymaker's deliberate
indifference (4) caused the officers' excessive force and false
arrest of Zampetis.  Under these circumstances, without more,
the Complaint does not factually substantiate its stated
conclusion that a policy or custom adopted by Atlantic City
caused the officers' violation of Zampetis's Fourth Amendment
rights.  See, e.g., Beck v. City of Pittsburgh, 89 F.3d 966 (3d
Cir. 1996) (holding that five written complaints of violence
against the officer who used excessive force against the
plaintiff, which had been transmitted through the chain of
command to the policymaker, the chief of police, were sufficient
to show that the chief knew or should have known of Williams's
violent behavior in arresting citizens); Bielevicz v. Dubinon,

---

[4] Under New Jersey law, the Chief of Police is the relevant
policymaker for a municipal police department.  See Hernandez v.
Bor. Of Palisades Park Police Dept., 58 F. App'x 909, 913 (3d Cir.
2003)(citing N.J. Stat. Ann. § 40A:14-118).

915 F.2d 845, 851 (3d Cir. 1990)("[T]o sustain a § 1983 action against the City, plaintiffs must [show] that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury.")

In his reply brief, Zampetis relies on an opinion issued by Magistrate Judge Schneider on April 10, 2015, in Costantino v. City of Atlantic City, Civ. No. 13-6667 (RBK), 2015 WL 1609693 (D.N.J. Apr. 10, 2015),[5] and the existence of other excessive force actions in this Court against Atlantic City.  He argues that these lawsuits show that Atlantic City had a custom of acquiescing in its police officers' violation of persons' Fourth Amendment rights.

To be sure, in 2014, three other New Jersey District Judges denied Atlantic City's summary judgment motions in excessive force during arrest cases.  See Mehr v. Atlantic City, Civ. No.

_____

[5] Judge Schneider was not deciding a motion to dismiss under Rule 12(b)(6) and the docket shows that no defendant in Costantino filed a motion to dismiss under Rule 12(b)(6).  In addition, unlike the Complaint filed by Zampetis, the second amended complaint filed by Costantino alleged that the police officer involved in that case was the subject of 21 civilian complaints of misconduct, 15 of which related to excessive force, and that the officer, along with the City of Atlantic City, were being sued in this Court in at least five separate causes alleging excessive force.

12-4499 (RBK), 2014 WL 4350546 (D.N.J. Sept. 2, 2014); Forero v. Atlantic City, Civ. No. 11-1630 (JHR), 2014 WL 1301535 (D.N.J. Mar. 31, 2014); Cordial v. Atlantic City, Civ. No. 11-1457 (RMB), 2014 WL 1095584 (D.N.J. Mar. 19, 2014).  For example, Judge Kugler held in Mehr that there were genuine issues of material fact as to whether Atlantic City had a custom of acquiescing in officers' use of excessive force where the plaintiff had presented evidence establishing that 509 excessive force complaints had been lodged with Internal Affairs from 2005 to 2010, the officer who was alleged to have used excessive force against Mehr had been the subject of 12 of those excessive force complaints, and the Chief of Police at that time testified that he was responsible for reviewing all Internal Affairs complaints and forwarding them to the prosecutor.  See Mehr, 2014 WL 4350546 at *10.  Similarly, Judge Rodriguez denied summary judgment to Atlantic City where the plaintiff had provided evidence showing that one defendant-police officer in that case had been the subject of seven Internal Affairs complaints, the other officer had one excessive force complaint, and 509 excessive force complaints had been filed with Internal Affairs between 2005 and 2010.  See Forero, 2014 WL 13011535 at *4.  As Judge Rodriguez and this Court observed, "statistical

23

evidence alone may not justify a . . . finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers." <u>Merman v. City of Camden</u>, 824 F. Supp. 2d 581, 591 (D.N.J. 2010); <u>Forero</u> at *3. "If a plaintiff relies mainly on statistics showing the frequency of excessive force complaints and how frequently they are sustained, the plaintiff must show why the prior incidents were wrongly decided [by Internal Affairs] and how the misconduct in the case is similar to that involved in the present action." <u>Forero</u> at *3.

The problem with Zampetis's Complaint is that it does not set forth facts identifying the City's policymaker (at the relevant time) and showing that the policymaker's deliberate indifference caused the officers to violate his Fourth Amendment rights. The Court will dismiss the § 1983 claims against the City of Atlantic City without prejudice to the filing of an amended complaint curing the defects found by the Court within 30 days.[6]

---

[6] In an amended complaint, Zampetis could cite the cases identified by this Court, as well as others, but he must still identify the policymaker – Chief of Police – at the time of the incident and factually establish that the policymaker had notice, acted with deliberate indifference, and that this deliberate indifference caused injury to Zampetis.

**B.    Supplemental Jurisdiction**

"Supplemental jurisdiction allows federal courts to hear
and decide state-law claims along with federal-law claims when
they are so related to claims in the action within such original
jurisdiction that they form part of the same case or
controversy."  Wisconsin Dept. of Corrections v. Schacht, 524
U.S. 381, 387 (1998) (citation and internal quotation marks
omitted).  Where a district court has original jurisdiction
pursuant to 28 U.S.C. § 1331 over federal claims and
supplemental jurisdiction over state claims pursuant to 28
U.S.C. § 1367(a), the district court has discretion to decline
to exercise supplemental jurisdiction if it has dismissed all
claims over which it has original jurisdiction.  See 28 U.S.C. §
1367(c)(3); Growth Horizons, Inc. v. Delaware County, PA, 983
F.2d 1277, 1284-1285 (3d Cir. 1993).  In this case, the Court is
dismissing every claim over which it had original subject matter
jurisdiction at an early stage in the litigation and declines to
exercise supplemental jurisdiction over Plaintiff's state law
claims pursuant to 28 U.S.C. § 1367(c)(3).

## IV.   CONCLUSION

For the reasons set forth in this Opinion, this Court will
grant the motions to dismiss, dismiss the federal claims against

all defendants without prejudice to the filing of an amended

complaint, and decline to exercise supplemental jurisdiction.


                                   /s/Noel L. Hillman
                                 **NOEL L. HILLMAN, U.S.D.J.**

DATED:  December 21, 2015