UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NICHOLAS J. ZAMPETIS,

       Plaintiffs,           Civil Action No. 15-1231 (NLH)

     v.

CITY OF ATLANTIC CITY, et al.,          OPINION

       Defendants.

APPEARANCES:

    DAVID R. CASTELLANI
    450 Tilton Road, Suite 245
    Northfield, NJ 08225
    Attorney for Plaintiff Nicholas J. Zampetis

    A. MICHAEL BARKER
    VANESSA ELAINE JAMES
    Barker, Gelfand & James
    210 New Road
    Linwood, NJ 08221
    Attorney for Defendant City of Atlantic City

    MICHAEL E. RILEY
    Law Offices of Riley & Riley
    100 High Street
    Mt. Holly, NJ 08060
    Attorney for Defendants Ivan Lopez, Anthony Alosi, Jr.,
    Mike Auble

HILLMAN, District Judge:

Nicholas J. Zampetis filed a Complaint against the City of Atlantic City, Atlantic City Police Officers Ivan Lopez, Anthony Alosi, Jr., Mike Auble, and several John Doe police officers claiming violation of his rights under 42 U.S.C. 1983 and New Jersey law.  By Order and accompanying Opinion entered on

December 21, 2016, the Court granted the motion to dismiss filed
by the four police officers, (ECF No. 6), as well as the motion
to dismiss filed by Atlantic City. (ECF No. 3.)  The Court
granted Plaintiff leave to file an amended complaint.

Plaintiff filed an Amended Complaint and the police officer
Defendants filed an Answer.  Presently before the Court is a
motion to dismiss the Amended Complaint pursuant to Fed. R. Civ.
P. 12(b)(6) filed by Atlantic City.  Atlantic City argues that
the Amended Complaint does not correct the deficiencies of the
Complaint and fails to state a claim under 42 U.S.C. § 1983
against the City.  The City seeks dismissal of all claims
against the City with prejudice.  Plaintiff opposes the motion,
arguing that the Amended Complaint sufficiently alleges § 1983
claims against Atlantic City for arrest without probable cause
and use of excessive force.

Because the Amended Complaint fails to correct the
deficiencies noted in this Court's Opinion supporting dismissal
of the Complaint and for the reasons set forth more fully below,
the Court will grant the motion and dismiss the federal claims
against Atlantic City raised in the Amended Complaint.  The
dismissal will be without prejudice to the filing of a second

2

and final amended complaint within 30 days of the date of the
entry of the Order accompanying this Opinion.  See Del Rio-Mocci
v. Connolly Properties Inc., 672 F.3d 241, 251 (3d Cir. 2012);
Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

## I.  BACKGROUND

In his original Complaint, Zampetis sued the City of
Atlantic City, Atlantic City Police Officers Ivan Lopez, Anthony
Alosi, Jr., Mike Auble and five John Does.  He asserted that at
about 2:00 to 3:00 a.m. on February 17, 2013 (early Sunday
morning), while celebrating a friend's birthday at the Tropicana
Hotel and Casino in Atlantic City, Defendants Lopez, Alosi,
Auble and John Doe officers arrested him without probable cause.
He alleged that these Defendants also beat him and falsely
charged him with criminal charges to cover up their wrongdoing.

In Count One, Zampetis claimed that the individual police
officers violated his constitutional rights to freedom from
unlawful arrest, false imprisonment, deprivation of liberty, and
excessive force under 42 U.S.C. § 1983.  In Count Two, he
claimed that Atlantic City had actual knowledge that the
individual Defendants had a propensity to violate the Fourth
Amendment rights of persons and failed to take appropriate

3

action; Atlantic City and its Police Department adopted policies and procedures designed to prevent citizens from filing complaints with Internal Affairs; Atlantic City had a custom of allowing officers to use excessive force during arrests and to file false criminal charges and reports without fear of discipline; and Atlantic City failed to adequately train and supervise officers regarding the requirements of the Fourth Amendment.  In Count Three, Zampetis claimed that the individual Defendants conspired to violate his constitutional rights and in Count Four he claimed that the actions of the individual Defendants warranted an award of punitive damages.  In Count Five, Zampetis asserted that Defendants violated his rights under New Jersey law.

The City and the individual Defendants filed separate motions to dismiss.  In the Court's prior Opinion, (ECF No. 12), the Court found that the Complaint failed to plead factual content that allowed the Court to draw the reasonable inference that the individual police officer Defendants were liable for violating Plaintiff's Fourth and Fourteenth Amendment rights under § 1983 prohibiting use of excessive force during arrest, arrest without probable cause and false imprisonment.  See

4

Ashcroft v. Iqbal, 556 U.S. 662 (2009).  The Court also dismissed the federal claims against Atlantic City.  The Court found that the Complaint necessarily failed to state a federal claim against the City because "neither Monell ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when ... the officer inflicted no constitutional harm."  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (per curiam); accord Mulholland v. Government County of Berks, PA., 706 F.3d 227, 238 n.15 (3d Cir. 2013); Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003).  Alternatively, the Court found that the Complaint failed to sufficiently plead a federal claim against Atlantic City under Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978), Bd. Of County Com'rs of Bryan County, Okl. V. Brown, 520 U.S. 397, 407 (1997), and Connick v. Thompson, 563 U.S. 51 (2011).

Plaintiff has now filed an Amended Complaint.  The Amended Complaint identifies Ernest Jubilee as the Police Chief and policymaker for Atlantic City with respect to the conduct of

police officers at the time of the incident.[1]  The Amended
Complaint repeats the conclusory allegations regarding Atlantic
City that this Court disregarded when it dismissed the original
Complaint for failure to state a claim and asserts that the
Chief knew that the individual Defendants had the propensity to
violate citizens' constitutional rights yet failed to take
appropriate action.

## II.  STANDARD OF REVIEW

To survive dismissal for failure to state a claim upon
which relief may be granted under Rule 12(b)(6), "a complaint
must contain sufficient factual matter, accepted as true, to
'state a claim for relief that is plausible on its face.'  A
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged.'"
Iqbal, 556 U.S. at 678 (citations omitted).  Although for the

---

[1] Under New Jersey law, the Chief of Police is the relevant
policymaker for a municipal police department.  See Hernandez v.
Bor. Of Palisades Park Police Dept., 58 F. App'x 909, 913 (3d Cir.
2003)(citing N.J. Stat. Ann. § 40A:14-118).

purposes of Rule 12(b)(6) a court must take factual allegations in the complaint as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted).

Thus, in deciding a motion to dismiss, a court uses a three-step process. See Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).  First, a court must "tak[e] note of the elements a plaintiff must plead to state a claim [under the appropriate substantive law]." Iqbal, 556 U.S. at 675.  Second, a court identifies "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679; see also Santiago, 629 F.3d at 128 ("We take as true all the factual allegations of the Third Amended Complaint and the reasonable inferences that can be drawn from them, but we disregard legal conclusions and recitals of the elements of a cause of action, supported by mere conclusory statements.") (citations and internal quotation marks omitted). Third, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. at

130.

### III.  DISCUSSION

As Plaintiff acknowledges, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978). Liability may be imposed against a municipality under Monell "when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted).  "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483

8

(1986).  A policymaker is a person who is "responsible for establishing final government policy respecting" the activity in question and "whether an official had final policymaking authority is a question of state law." Id.

A § 1983 claim, like Plaintiff's claims here, based on the policymaker's failure to train or supervise employees "must amount to 'deliberate indifference to the rights of persons with whom the [untrained or unsupervised employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011)(quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)).[2] "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick, 563 U.S. at 61.

---

[2] See also Bd. Of County Com'rs of Bryan County, Okl. V. Brown, 520 U.S. 397, 407 (1997) ("[A] plaintiff seeking to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights must demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences.").

Accordingly, to overcome dismissal of the § 1983 claim against Atlantic City, Zampetis must plead facts showing that (1) Chief Jubilee (2) had notice and (3) "consciously disregarded an obvious risk that the officer[s] would subsequently inflict a particular constitutional injury," Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 411 (1997), and (4) this deliberate indifference caused the officers' to use excessive force and falsely arrest Zampetis. See Connick, 563 U.S. at 58-62.

### (A) Does Plaintiff Sufficiently Plead Notice?

The first question here is whether Zampetis has alleged sufficient facts to plausibly support an inference that Chief Jubilee had notice of the need for additional training and supervision of Officers Alosi, Lopez and Auble.  This Court will disregard the conclusory allegations which the Amended Complaints repeats from the original Complaint and consider whether the additional allegations set forth in the Amended Complaint are sufficient.

The Amended Complaint asserts that Chief Jubilee "had actual knowledge that these individual Defendants, Lopez, Alosi Jr., Auble, and John Doe Police Officers 1-5 had propensity to

10

deprive the citizens" of their "Constitutional Rights and failed to take proper action to protect the citizens . . . from these Defendants."  (Am. Compl., ECF No. 14 at 8.)  In and of itself, the allegation that Chief Jubilee had knowledge is conclusory. As factual support for Jubilee's knowledge, Plaintiff alleges that Defendant Alosi "has been the subject of both Internal Affairs' complaints and civil rights litigation along with the Defendant City of Atlantic City and other Atlantic City Police Officers alleging use of excessive force and unlawful arrest in the matter of Charlie Harrison v. Anthony Alosi and the City of Atlantic City, et al., Case Number 1:2014-cv-06292 filed October 9, 2014[.]"  (ECF No. 14 at 9.)

    Next, Plaintiff alleges that Chief Jubilee had "knowledge of the individual Defendants use of unlawful and excessive use of force with respect to effecting arrest and specific knowledge of the approximate 509 excessive force complaints that have been filed with Internal Affairs division between 2005 and 2010[.]" (ECF No. 14 at 14.)  Finally, Plaintiff alleges that "the City of Atlantic City has pending against it the largest amounts of Civil Rights Complaints in Federal Court for excessive force of any City and State of New Jersey totaling approximately thirteen

11

in number at the time of the filing of this complaint." Id. at 8-9.  The Amended Complaint refers to Mehr v. City of Atlantic City, Civil No. 12-4499 (RBK); Forero v. Atlantic City, Civ. No. 11-1630 (JHR); and Cordial v. Atlantic City, Civ. No. 11-1457 (RMB), as cases allegedly concerning the City's custom of acquiescing in the use of excessive force by its police.

Plaintiff asserts that Chief Jubilee had notice on February 17, 2013 (the date of the incident), that Defendant Alosi posed a risk of using excessive force because Harrison v. Atlantic City, Civ. No. 14-6292 (JHR) (D.N.J., filed Oct. 9, 2014), a civil rights case alleging that Alosi used excessive force, is pending in this Court.  The filing of Harrison on October 9, 2014, could not have put the police chief on notice that Alosi needed training or supervision to prevent the alleged use of excessive force against Plaintiff on February 17, 2013, the date of Plaintiff's arrest.  Moreover, even if Harrison had been filed prior to the incident involving Plaintiff, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and

12

the constitutional deprivation." City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) (footnotes omitted).  Thus, allegations concerning the filing and pendency of Harrison do not show that Chief Jubilee had notice of Alosi's risk of using excessive force against and falsely arresting Plaintiff.

Plaintiff also asserts that Chief Jubilee knew of the risk that the Defendant officers would use excessive force and falsely arrest Plaintiff because there are so many excessive force cases pending in this District against Atlantic City.  The Amended Complaint refers specifically to the three cases this Court referenced in its prior dismissal Opinion, i.e., Mehr v. Atlantic City, Civ. No. 12-4499 (RBK), 2014 WL 4350546 (D.N.J. Sept. 2, 2014); Forero v. Atlantic City, Civ. No. 11-1630 (JHR), 2014 WL 1301535 (D.N.J. Mar. 31, 2014); Cordial v. Atlantic City, Civ. No. 11-1457 (RMB), 2014 WL 1095584 (D.N.J. Mar. 19, 2014), for the proposition that Chief Jubilee had notice of the need for greater supervision and training.  But the fact that other police officers are alleged to have used excessive force does not put the Police Chief on notice that the Defendant officers in this case posed a risk of using excessive force and falsely arresting persons.

13

Moreover, Judge Kugler held in <u>Mehr</u> that there were genuine issues of material fact as to whether Atlantic City had a custom of acquiescing in officers' use of excessive force where the plaintiff had presented evidence establishing that 509 excessive force complaints had been lodged with Internal Affairs from 2005 to 2010, the officer who was alleged to have used excessive force against Mehr had been the subject of 12 of those excessive force complaints, and the Chief of Police at that time testified that he was responsible for reviewing all Internal Affairs complaints and forwarding them to the prosecutor.  <u>See Mehr</u>, 2014 WL 4350546 at *10.  Similarly, Judge Rodriguez denied summary judgment to Atlantic City in <u>Forero</u> where the plaintiff had provided evidence showing that one defendant-police officer in that case had been the subject of seven Internal Affairs complaints, the other officer had one excessive force complaint. <u>See Forero</u>, 2014 WL 13011535 at *4.  As Judge Rodriguez and this Court have observed, "statistical evidence alone may not justify a . . . finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers."  <u>Merman v. City of Camden</u>, 824 F. Supp. 2d 581, 591 (D.N.J. 2010); <u>Forero</u> at *3.  "If a plaintiff relies mainly on statistics

14

showing the frequency of excessive force complaints and how
frequently they are sustained, the plaintiff must show why the
prior incidents were wrongly decided [by Internal Affairs] and
how the misconduct in the case is similar to that involved in
the present action."  Forero at *3.

    Finally, Plaintiff asserts that Chief Jubilee had

> specific knowledge of the approximate 509 excessive
> force complaints that have been filed with Internal
> Affairs division between 2005 and 2010 and
> deliberately failed to order re-training, discipline
> or take any other action to prevent the same conduct
> from re-occurring in the future.  It is further
> alleged that Chief of police Jubilee and his Deputy
> Assistant were responsible for reviewing all such
> Internal Affairs Complaint[s] and recommending
> disciplinary action to be taken against the police
> officers involved and failed to recommend or take any
> disciplinary action against Defendants or other police
> officers despite their knowledge of these officers'
> unconstitutional conduct with deliberate indifference
> towards the consequences of their actions to Plaintiff
> and other members of the public welfare.

(Complaint, ECF No. 14 at 14.)

    These allegations do not support an inference that Chief
Jubilee had notice in February 2013 of the need for additional
training and supervision of the police officer Defendants in
this case regarding arrests and the use of excessive force under
the Fourth Amendment.  Zampetis asserts that Chief Jubilee was
responsible for reviewing Internal Affairs complaints but he

15

does not assert facts showing that Jubilee was the police chief from 2005 to 2010, that Jubilee reviewed any of the 509 complaints lodged between 2005 and 2010, or that Jubilee otherwise knew of a pattern of the Defendant police officers' violating citizens' Fourth Amendment rights to avoid use of excessive force or arrest without probable cause.  See Connick, 563 U.S. at 59.  Allegations that an offending officer was the subject of similar prior complaints, of which the policymaker was aware, can support an inference that the policymaker tacitly had notice of and tacitly condoned the use of excessive force. See Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 74 (3d Cir. 2011) (noting that "the typical 'notice' case seems to involve a prior incident or incidents of misconduct by a specific employee or group of employees, specific notice of such misconduct to their superiors, and then continued instances of misconduct by the same employee or employees"); Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996) (holding that five complaints of excessive force against the officer who used excessive force against the plaintiff, which had been transmitted through the chain of command to the

policymaker-chief of police were sufficient to show that the policymaker knew of the officer's violent behavior).

But in this case, Plaintiff has not alleged facts describing Internal Affairs complaints against the individual police officers named in this case.  Nor has he alleged facts supporting an inference that Chief Jubilee was aware of a pattern of misconduct by these police officers.  Thus, he has not alleged facts showing that Chief Jubilee had notice that these police officers required additional training or supervision to avoid violating citizens' Fourth Amendment rights against false arrest and excessive force.  See Argueta, 643 F.3d at 75 (holding that plaintiffs did not plausibly allege that the supervisory defendants had notice of the unconstitutional conduct of their subordinates where plaintiffs relied on reports of misconduct by other subordinates and court cases not involving the same subordinates); McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009) (holding that McTernan did not sufficiently plead a § 1983 claim against the municipality based on acts of police officers:  "Although McTernan maintains that York officers 'periodically' instructed protesters to exit the alley, he does not plead knowledge of such directives by a

17

municipal decisionmaker."); <u>Wood v. Williams</u>, 568 F.App'x 100,
105 (3d Cir. 2014) (affirming dismissal of municipal failure to
train claim because "the complaint did not allege any facts that
could support an inference that the [policymaker] was on notice
of the risk of retaliation for First Amendment protected speech
by employees, and that it was deliberately indifferent to this
risk.")

It might seem harsh at the pleading stage to require
Plaintiff to assert facts indicating that Chief Jubilee had
notice prior to the incident involving Plaintiff in February
2013 that the particular officers involved here posed a risk of
using excessive force and arresting citizens without probable
cause but the Supreme Court's decision in <u>Iqbal</u> requires it.  In
that case, the complaint claimed that Attorney General John
Ashcroft and FBI Director John Mueller violated Iqbal's equal
protection rights by condoning and agreeing to subject Iqbal to
harsh conditions of confinement solely on account of his race,
religion and/or national origin.  The Court held that the
allegation that Ashcroft and Mueller discriminated against him
"on account of [his] religion, race, and/or national origin and
for no legitimate penological interest" was a conclusory and

18

formulaic recitation of the elements of a constitutional discrimination claim, and was not entitled to be assumed true. See Iqbal, 556 U.S. at 681.

The Court found that the factual allegation that Ashcroft and Mueller adopted a policy of approving harsh conditions of confinement for post-September 11 detainees until the FBI cleared them did not plausibly suggest that Ashcroft and Mueller purposefully discriminated against the detainees because of their race, religion or national origin and, therefore, did not state a claim for purposeful discrimination claim against these high ranking defendants.  This Court is unable to distinguish Iqbal and finds that the Amended Complaint does not sufficiently plead that the Police Chief had notice of the need for greater supervision and training of the particular Defendants Alosi, Lopez, and Auble.

**(B) Does Plaintiff Sufficiently Plead Deliberate Indifference?**

Plaintiff alleges that Chief Jubilee and the Internal Affairs Department "deliberately and intentionally failed to properly investigate complaints against its police officers, including the named Defendants for excessive force and improper arrest which has specifically led to an atmosphere of deliberate

19

indifference by the Defendant City of Atlantic City, its
Internal Affairs Division and its Chief of Police Ernest Jubilee
towards the constitutional rights of citizens including the
Plaintiff[.]" Id.  Plaintiff alleges that Chief Jubilee and his
deputy assistant White had "deliberately failed to order re-
training, discipline or take any other action to prevent the
same conduct from re-occurring in the future." Id. at 14.

He further asserts that the City and its Police Department
"have a permanent and well settled practice of refusing to
adequately respond to and investigate complaints regarding
officer misconduct by the citizenry [and that this practice] is
evident from the 509 excessive force complaints filed between
2005 and 2010 . . . and the failure of Chief Jubilee, or any
other Chief and/or the Internal Affairs Department from
sustaining few if any of the 509 complaints." Id. at 15.

These allegations are conclusory and formulaic and must be
disregarded as such.  In addition, the deliberate indifference
standard requires actual knowledge of a risk in advance of the
incident.  As the Supreme Court has explained, "an official's
failure to alleviate a significant risk that he should have
perceived but did not, while no cause for commendation, cannot

under our cases be condemned as [unconstitutional deliberate indifference]." Farmer v. Brennan, 511 U.S. 825, 835 (1994); see also, e.g., Beck, 89 F.3d 966 (3d Cir. 1996).

To summarize, the essential problem with the Amended Complaint is that it does not set forth non-conclusory facts showing that Chief Jubilee was aware, prior to February 2013, that Alosi, Lopez and Auble required closer supervision or additional training to avoid their arresting people without probable cause and using excessive force during arrest. Absent such notice, the Amended Complaint does not sufficiently assert that Chief Jubilee's deliberate indifference caused these officers to violate Plaintiff's Fourth Amendment rights. The Court will dismiss the § 1983 claims against the City of Atlantic City without prejudice to the filing of a final amended complaint curing the defects found by the Court within 30 days.

<u>IV. CONCLUSION</u>

For the reasons set forth in this Opinion, this Court will grant Atlantic City's motion to dismiss.

s/Noel L. Hillman
**NOEL L. HILLMAN, U.S.D.J.**

DATED: September 27, 2016
At Camden, New Jersey

21